UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

----------------------------------------------------------X

ABDEL ABLA, on behalf of himself and all
others similarly situated,

                              Plaintiff,

              v.

BRINKER RESTAURANT CORPORATION                    No. 1:10-cv-10373-NG
AND BRINKER INTERNATIONAL, INC.
d/b/a MAGGIANO'S LITTLE ITALY,

                              Defendants.

----------------------------------------------------------X


**MEMORANDUM OF LAW IN SUPPORT OF
BRINKER'S MOTION TO DISMISS AND/OR STRIKE
PLAINTIFF'S RULE 23 CLASS ALLEGATIONS**


Jeffrey S. Brody (BBO # 566032)
Douglas J. Hoffman (BBO # 640472)
JACKSON LEWIS LLP
75 Park Plaza
Boston, MA 02116
(617) 367-0025; (617) 367-2155 (fax)
brodyj@jacksonlewis.com
hoffmand@jacksonlewis.com

Counsel for Brinker Restaurant Corporation and
Brinker International, Inc.

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................................... 1

ARGUMENT ................................................................................................................................... 2

I.     AN EARLY DETERMINATION OF THE CLASS CERTIFICATION ISSUE IS APPROPRIATE IN THIS CASE. ................................................................................... 2

II.    MR. ABLA CANNOT SATISFY THE PREDOMINANCE REQUIREMENT BECAUSE OF THE MULTITUDE OF DIFFERENCES IN STATE LAWS ............. 3

      A.    Unjust Enrichment/Quantum Meruit ................................................................. 5

      B.    Tortious Interference ......................................................................................... 7

      C.    Breach of Implied Contract .............................................................................. 8

III.   MR. ABLA CANNOT ESTABLISH PREDOMINANCE BECAUSE THE COMMON LAW CLAIMS ARE INHERENTLY INDIVIDUALIZED. ................... 9

      A.    Unjust Enrichment And Tortious Interference Claims ................................... 10

      B.    Breach Of Contract ........................................................................................ 11

IV.   PLAINTIFF CANNOT SATISFY THE SUPERIORITY OR ADEQUACY REQUIREMENTS OF RULE 23. ................................................................................ 14

V.    MR. ABLA LACKS STANDING TO BRING CLAIMS UNDER THE COMMON LAWS OF STATES OTHER THAN MASSACHUSETTS. ................................... 17

VI.   THIS COURT SHOULD DECLINE TO FOLLOW THE RECENT DECISION IN OVERKA V. AMERICAN AIRLINES ..................................................................... 18

CONCLUSION .............................................................................................................................. 20

i

Pursuant to Rules 12(b)(6), 12(f), and 23(d)(1)(D) of the Federal Rules of Civil Procedure, Defendants Brinker Restaurant Corporation and Brinker International, Inc. (collectively, "Brinker"),[1] move to dismiss and/or strike Plaintiff's Rule 23 class allegations with respect to his purported nationwide class.

## INTRODUCTION

Plaintiff Abdel Abla, a server at the Maggiano's Little Italy restaurant in Boston, asserts in his Complaint that Brinker imposes a flat charge on guests for banquet events in the range of 18-20% and fails to distribute this charge solely to the wait staff who worked the banquet, in alleged violation of Massachusetts statutory law and the common law of 21 states.[2]  In addition to seeking to represent a Massachusetts-only class for the claims arising under Massachusetts statutes, Mr. Abla seeks to represent a nationwide class of all Maggiano's wait staff based on the common-law theories of tortious interference with contractual and/or advantageous relations (Count I), unjust enrichment/quantum meruit (Count II), and breach of contract (Count III).

As explained in detail below, this case cannot be maintained as a nationwide class action for at least four reasons.  *First*, under Mr. Abla's proposed nationwide class, the law applicable to each class member's claims would differ in numerous and substantial ways depending upon his/her state of residence, undermining predominance of common issues and superiority of class adjudication and rendering a nationwide case unmanageable.  *Second*, the common law claims here are inherently inappropriate for class certification due to the individualized inquiries necessary to resolve each class member's claims.  *Third*, because certification of this class would force class members outside Massachusetts to forego remedies under their state wage laws, Mr. Abla cannot satisfy the adequacy or superiority elements of Rule 23.  *Fourth,* Mr. Abla does not have standing to bring claims under

---

[1]   Mr. Abla has not sued the proper defendant; his employer is actually Brinker International Payroll Company, L.P.

[2]   Mr. Abla also contends that Brinker has violated M.G.L. 151 §§ 1 and 7 because Brinker allegedly fails to qualify for the state "tip credit" against the minimum wage.

the common laws of states other than Massachusetts, where he lives and works.  He is therefore not

an adequate representative of Maggiano's employees in other states.[3]

Brinker respectfully submits that the Court should: (1) strike the class action allegations with

regard to the proposed nationwide class; and (2) dismiss Counts I-III of the Complaint as they relate

to any individuals not within Mr. Abla's proposed "Massachusetts subclass."

## <u>ARGUMENT</u>

## I. AN EARLY DETERMINATION OF THE CLASS CERTIFICATION ISSUE IS APPROPRIATE IN THIS CASE.

Numerous courts have recognized that Rules 12 and 23 of the Federal Rules of Civil

Procedure permit defendants to seek an early ruling on class certification issues.  "Nothing in the

plain language of [Rule 23] either vests plaintiffs with the exclusive right to put the class certification

issue before the district court or prohibits a defendant from seeking early resolution of the class

certification question."  <u>Bearden v. Honeywell Int'l, Inc.</u>, 2010 U.S. Dist. LEXIS 28331, at *28

(M.D. Tenn. Mar. 24, 2010) (quoting <u>Vinole v. Countrywide Home Loans, Inc.</u>, 571 F.3d 935, 939-

40 (9th Cir. 2009)).  Addressing the class certification issue particularly early in the case is especially

appropriate where, as here, "it is clear from the face of the complaint that a proposed class cannot

satisfy the requirements of Rule 23."  <u>Bearden</u>, 2010 U.S. Dist. LEXIS 28331, at *29.[4]

---

[3] Brinker reserves the right to raise additional arguments against class certification at a later date based on the numerous diverse factual and legal issues that would make class certification inappropriate in this matter.

[4] <u>See also</u> <u>John v. Nat'l Sec. Fire & Cas. Co.</u>, 501 F.3d 443, 445 (5th Cir. 2007) ("Where it is facially apparent from the pleadings that there is no ascertainable class, a district court may dismiss the class allegation on the pleadings."); <u>Lindley v. Life Investors Ins. Co. of Am.</u>, 2010 U.S. Dist. LEXIS 22898, at *8 (N.D. Okla. Mar. 11, 2010) ("This rule gives a district court the authority to strike or dismiss class allegations before discovery if it is apparent from the plaintiff's complaint that a class cannot be certified.") (citing <u>Hovsepian v. Apple, Inc.</u>, 2009 U.S. Dist. LEXIS 117562 (N.D. Cal. Dec. 17, 2009)); <u>Shein v. Canon U.S.A., Inc.</u>, 2009 U.S. Dist. LEXIS 94109, at *23-24 (C.D. Cal. Sept. 22, 2009) (noting that a pre-discovery motion to strike class allegations is appropriate if "any questions of law are clear and undisputed, and . . . under no set of circumstances could the claim succeed"); <u>Muehlbauer v. GMC</u>, 431 F. Supp. 2d 847, 870-72 (N.D. Ill. 2006) (noting that, pursuant to Rules 23(c)(1)(A) and 23(d)(1)(D), a court can review class allegations before discovery and strike them if they are "facially deficient and no amount of discovery can save them"); <u>Lumpkin v. E.I. Du Pont De Nemours & Co.</u>, 161 F.R.D. 480, 481-82 (M.D. Ga. 1995) (denying certification early in discovery because individual issues predominated and noting that

Courts have likewise allowed motions under Rule 12(f) to strike class allegations and deny class certification under Rule 23.  See, e.g., Bearden, 2010 U.S. Dist. LEXIS 28331, at *28-29 ("[T]here is precedent for treating a Rule 12(f) motion to strike class allegations as a motion to deny class certification under Rule 23, which governs class actions.") (citing Smith v. Bayer Corp. (In re Baycol Prods. Litig.), 593 F.3d 716, 721 n.2 (8th Cir. 2010)).[5]

As explained in detail below, an early determination of the class issue is appropriate in this case because there is no set of facts under which Mr. Abla's nationwide class can satisfy the elements of Rule 23.

## II. MR. ABLA CANNOT SATISFY THE PREDOMINANCE REQUIREMENT BECAUSE OF THE MULTITUDE OF DIFFERENCES IN STATE LAWS.

Under Rule 23(b)(3), the only prong of Rule 23(b) that could arguably apply here,[6] Mr. Abla must demonstrate, among other things, that "questions of law or fact common to class members [must] predominate over any questions affecting only individual members, and … a class action [must be] superior to other available methods for fairly and efficiently adjudicating the controversy." The numerous conflicting state-law claims here defeat predominance.

Where, as here, a plaintiff seeks to certify a class for which the laws of numerous states apply, "[p]rior to certification, the district court must determine whether variations in state law defeat predominance." Castano v. American Tobacco Co., 84 F.3d 734, 750 (5th Cir. 1996). It is Mr. Abla's burden to establish that the state laws necessarily implicated by his claim are not in

---

"[s]ometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim").

[5]  Dismissal is also appropriate under Rule 12(b)(6) if, after reviewing the allegations of the Complaint, the Court finds that the plaintiff cannot move forward on them. Weiss v. Wittcoff, 966 F. 2d 109, 112 (2d Cir. 1992). Dismissal of invalid Rule 23 class allegations like the ones alleged by Mr. Abla here is appropriate under this standard. See, e.g., Otto v. Pocono Health Sys., 457 F. Supp. 2d 522 (M.D. Pa. 2006) (dismissing plaintiff's state-law class action claim pursuant to Rule 12(b)(6)).

[6]  Rule 23(b)(3) applies when a plaintiff seeks "predominantly money damages." Ramirez v. DeCoster, 194 F.R.D. 348, 352 (D. Me. 2000) ("The relief sought in this case is predominantly money damages and, as such, is inappropriate for 23(b)(2) certification.").

conflict.  <u>Southern States Police Ben. Assoc., Inc. v. First Choice Armor & Equip</u>, 241 F.R.D. 85, 90

(D. Mass. 2007) (Gorton, J.); <u>Henry v. Allstate Ins. Co.</u>, 2007 U.S. Dist. LEXIS 57822, at *6 (E.D.

La. Aug. 8, 2007).

      Certification of this multistate class action, and applying the varying laws of 21 different

states, is inherently unworkable because individual questions of state law, as well as the varying

questions of fact necessitated by these legal differences, would easily overwhelm any questions

common to the class.  As one court recently observed:

> [T]here is simply no efficiency in asking a trial judge to manage the laws of 50
> different states as they apply to plaintiffs' contract claims and the varied factual
> scenarios inherent therein.  "Beyond the difficult task of correctly determining
> foreign law, the nationwide class action may present an even greater problem because
> of the sheer burden of organizing and following fifty or more different bodies of
> complex substantive principles.  Although the comparison obviously is inexact, ***one
> can appreciate the magnitude of the trial judge's task by imagining a first-year law
> student who, instead of a course in contracts, is required simultaneously to enroll
> in fifty courses, each covering the contract law of a single state, and to apply each
> body of law correctly on the final examination***."

<u>Schnall v. AT&T Wireless Servs., Inc</u>, 2010 Wash. LEXIS 61, at *20 (Wash., Jan. 21, 2010)

(emphasis added) (citations omitted).  Therefore, "[b]ased primarily on the burden of applying

multiple states' laws, an overwhelming number of federal courts have denied certification of

nationwide state-law class actions."  <u>Id.</u> at *12-15.[7]  Courts grant motions to strike class allegations

---

[7]    Quoting Rory Ryan, Comment, <u>Uncertifiable?: The Current Status of Nationwide State-Law Class Actions</u>,
54 Baylor L. Rev. 467 (2002) and citing, among others, <u>Stirman v. Exxon Corp.</u>, 280 F.3d 554, 564-66 (5th Cir.
2002); <u>Zinser v. Accufix Research Inst., Inc.</u>, 253 F.3d 1180, 1187, amended by 273 F.3d 1266 (9th Cir. 2001);
<u>Szabo v. Bridgeport Machs., Inc.</u>, 249 F.3d 672, 678 (7th Cir. 2001); <u>In re LifeUSA Holding, Inc.</u>, 242 F.3d 136,
147 (3d Cir. 2001); <u>Spence v. Glock</u>, 227 F.3d 308, 316 (5th Cir. 2000); <u>Andrews v. Am. Tel. & Tel. Co.</u>, 95 F.3d
1014, 1025 (11th Cir. 1996); <u>Castano</u>, 84 F.3d at 740; <u>Georgine v. Amchem Prods., Inc.</u>, 83 F.3d 610, 617 (3d Cir.
1996), aff'd sub nom. <u>Amchem Prods., Inc. v. Windsor</u>, 521 U.S. 591, 613 (1997); <u>In re Am. Med. Sys., Inc.</u>, 75
F.3d 1069, 1089 (6th Cir. 1996); <u>In re Rhone-Poulenc Rorer Inc.</u>, 51 F.3d 1293, 1302 (7th Cir. 1995); <u>Walsh v. Ford
Motor Co.</u>, 807 F.2d 1000, 1010-11 (D.C. Cir.1986); <u>In re Citigroup, Inc.</u>, 2001 U.S. Dist. LEXIS 18307 (D. Mass.
Oct. 26, 2001); <u>Hammett v. Am. Bankers Ins. Co.</u>, 203 F.R.D. 690, 700-02 (S.D. Fla. 2001); <u>Duncan v. Nw.
Airlines, Inc.</u>, 203 F.R.D. 601, 605, 610-14 (W.D. Wash. 2001); <u>Begley v. Acad. Life Ins. Co.</u>, 200 F.R.D. 489, 497
(N.D. Ga. 2001); <u>Oxford v. Williams Cos.</u>, 137 F. Supp. 2d 756, 764 (E.D. Tex. 2001); <u>Jones v. Allercare, Inc.</u>, 203
F.R.D. 290, 308 (N.D. Ohio 2001); <u>Stipelcovich v. DirecTV, Inc.</u>, 129 F. Supp. 2d 989, 995 (E.D. Tex. 2001);
<u>Shelley v. AmSouth Bank</u>, 2000 U.S. Dist. LEXIS 11428 (S.D. Ala. July 24, 2000), aff'd, 247 F.3d 250 (11th Cir.
2001); <u>Lyon v. Caterpillar, Inc.</u>, 194 F.R.D. 206, 220-23 (E.D. Pa. 2000); <u>Adams v. Kan. City Life Ins. Co.</u>, 192
F.R.D. 274, 277-78 (W.D. Mo. 2000); <u>Hallaba v. Worldcom Network Servs. Inc.</u>, 196 F.R.D. 630, 645 (N.D. Okla.

prior to discovery where differences among state laws would overwhelm common questions. They reason that where the court is asked to apply the law of many states, no amount of discovery can rectify the resulting confusion. See, e.g., Pilgrim v. Universal Health Card, LLC, 2010 U.S. Dist. LEXIS 28298, at *13 (N.D. Ohio Mar. 25, 2010) (granting motion to strike class allegations for purported nationwide class under, among other claims, the theory of unjust enrichment).

As demonstrated below, and in Exhibits A, B and C hereto, which summarize the laws of unjust enrichment/quantum meruit, tortious interference, and breach of implied contract in each of the 21 states, the relevant legal standards vary widely among these jurisdictions. These differences would require the application of different legal standards to class members in the different states, overwhelming the Court and a potential jury with individualized questions of law.

A.      **Unjust Enrichment/Quantum Meruit**

Courts have been particularly cognizant of the material differences in state law as it relates to claims of unjust enrichment/quantum meruit. As one court has recognized: "unjust enrichment is a tricky type of claim that can have varying interpretations even by courts within the same state, let alone among the fifty states." Siegel v. Shell Oil Co., 256 F.R.D. 580, 584 (N.D. Ill. 2008) (quoting In re Sears, Roebuck & Co, 2006 U.S. Dist. LEXIS 92169, at n.3 (N.D. Ill. Dec. 18, 2006)). These numerous distinctions make multistate certification of unjust enrichment claims inadvisable. As explained in Siegel:

---

2000); Velasquez v. Crown Life Ins. Co., 1999 U.S. Dist. LEXIS 13186 (S.D. Tex. Aug. 10, 1999); Clay v. Am. Tobacco Co., 188 F.R.D. 483, 497-98, 503 (S.D. Ill. 1999); Carpenter v. BMW of N. Am., Inc., 1999 U.S. Dist. LEXIS 9272 (E.D. Pa. June 21, 1999); Chilton Water  Auth. v. Shell Oil Co., 1999 U.S. Dist. LEXIS 21595 (M.D. Ala. May 21, 1999); Powers v. Gov't Employees Ins. Co., 192 F.R.D. 313, 319-20 (S.D. Fla. 1998); Rothwell v. Chubb Life Ins. Co. of Am., 191 F.R.D. 25, 33 n.7 (D.N.H. 1998); Dhamer v. Bristol-Myers Squibb Co., 183 F.R.D. 520, 532-34 (N.D. Ill. 1998); Weikel v. Tower Semiconductor Ltd., 183 F.R.D. 377, 402-03 (D.N.J. 1998); In re Jackson Nat'l Life Ins. Co. Premium Litig., 183 F.R.D. 217, 225 (W.D. Mich. 1998); Marascalco v. Int'l Computerized Orthokeratology Soc'y, Inc., 181 F.R.D. 331, 340-41 (N.D. Miss. 1998); In re Ford Motor Co. Vehicle Paint Litig., 182 F.R.D. 214, 222-26 (E.D. La. 1998); Fisher v. Bristol-Myers Squibb Co., 181 F.R.D. 365, 368 (N.D. Ill. 1998); Poe v. Sears, Roebuck & Co., 1 F. Supp. 2d 1472, 1476 (N.D. Ga. 1998).

> The actual definition of 'unjust enrichment' varies from state to state. Some states do not specify the misconduct necessary to proceed, while others require that the misconduct include dishonesty or fraud. Other states only allow a claim of unjust enrichment when no adequate legal remedy exists. Many states, but not all, permit an equitable defense of unclean hands. Those states that permit a defense of unclean hands vary significantly in the requirements necessary to establish the defense.

Siegel, 256 F.R.D. at 584 (quoting Clay, 188 F.R.D. at 501).

For these reasons, several courts have ruled that the law of unjust enrichment is so variable that certification of a nationwide class is not appropriate as a matter of law. In re McDonald's French Fries Litigation, 257 F.R.D. 669, 673-74 (N.D. Ill. 2009) (denying certification of nationwide class alleging, *inter alia*, unjust enrichment, citing differences in state laws); Lilly v. Ford Motor Company, 2002 U.S. Dist. LEXIS 5698, at *5 (N.D. Ill. Apr. 3, 2002) (denying certification of nationwide unjust enrichment class because "[t]he variations in state common laws of unjust enrichment demonstrate that class certification of such a claim would be unmanageable"); Thompson v. Jiffy Lube Int'l, Inc., 250 F.R.D. 607, 626 (D. Kan. 2008) ("federal courts have generally refused to certify a nationwide class based upon a theory of unjust enrichment") (citation omitted); Clay, 188 F.R.D. at 501 (same). See also Pilgrim v. Universal Health Card, LLC, 2010 U.S. Dist. LEXIS 28298, at *9 (N.D. Ohio Mar. 25, 2010) ("the law on unjust enrichment var[ies] significantly from state to state."); Vulcan Golf, LLC v. Google Inc., 254 F.R.D. 521, 532-33 (N.D. Ill. 2008) (differences in state law on unjust enrichment preclude certification of nationwide class; citing numerous cases).

For example, this Court would be faced with the following varying state law rules relating to unjust enrichment in the 21 states at issue here:

- In some (but not all) states, a theory of unjust enrichment is only available when there is no legal contract. See, e.g., Camp Creek Hospitality Inns v. Sheridan Franchise Corp., 139 F.3d 1396, 1413 (11th Cir. 1998) (Georgia law); Smith v. Jenkins, 626 F. Supp. 2d 155, 170 (D. Mass. 2009) (Stearns, J.) (Massachusetts law); N.C. Monroe Constr. Co. v. State, 155 N.C. App. 320, 331 (N.C. Ct. App. 2002) (North Carolina law); Hickman v. Wells Fargo Bank N.A., 2010 U.S. Dist. LEXIS 6125, at *47 (N.D. Ill. Jan. 26, 2010) (Illinois law).

6

- In some (but not all) states, unjust enrichment is not a separate, freestanding cause of action <u>See, e.g.</u>, <u>Melchior v. New Line Prods., Inc.</u>, 106 Cal. App. 4th 779, 793 (Cal App. 2d 2003) (California law); <u>Smith</u>, 626 F. Supp. 2d at 170 (Massachusetts law); <u>Hickman,</u> 2010 U.S. Dist. LEXIS 6125, at *46 (Illinois law).

- Some states do not specify the misconduct required, while others require dishonesty or fraud.  <u>See, e.g.</u>, <u>Fimon v. Kenroc Drywall Supplies, Inc.</u>, 2003 WL 1220240, at *4 (Minn. Ct. App. March 18, 2003) (holding that Minnesota unjust enrichment law requires illegal or unlawful conduct by the defendant); <u>Heldenfels Bros. Inc. v. City of Corpus Christi</u>, 832 S.W. 2d 39, 41 (Tex. 1992) (under Texas, unjust enrichment law, benefit must be obtained by fraud, duress, or "taking of undue advantage").

## B.    Tortious Interference

Tortious interference claims also vary widely from state to state and will create numerous unique issues of state law, outweighing any common questions among the class members.   For example, this Court will be faced with the following varying rules among the 21 states at issue:

- Some but not all states require that the defendant be a "stranger" to the business relationship between the other two parties.  <u>Atlanta Mkt. Ctr. Mgmt. Co. v. McLane</u>, 269 Ga. 604, 608 (Ga. 1998) (applying Georgia law); <u>Seminole Transp. Specialists, Inc. v. Pdm Bridge, LLC</u>, 2009 U.S. Dist. LEXIS 111571, at *1 (M.D. Fla. Nov. 16, 2009) (applying Florida law) <u>Sarsfield v. County of San Benito</u>, 2008 U.S. Dist. LEXIS 32141, at *10 (N.D. Cal. Mar. 31, 2008) (applying California law); <u>Aurora Health Care, Inc. v. Codonix, Inc</u>., 2006 U.S. Dist. LEXIS 41689, at *17 (E.D. Wis. June 2, 2006) (applying Wisconsin law).[8]

- Some jurisdictions require proof that improper motive is the sole motive, while some look at malice as only one factor of many and another even requires proof of an illegal act.  <u>See., e.g.</u>, <u>Government Payment Service, Inc. v. Ace Bail Bonds</u>, 854 N.E.2d 1205, 1209 (Indiana requires plaintiffs to prove malice was the sole motive for a defendant's actions and that the conduct was illegal); <u>Patterson v. Methodist Healthcare-Memphis</u> Hospitals, 2010 Tenn. App. LEXIS 78, at *33 (Tenn. Ct. App. Feb. 2, 2010) (under Tennessee law, plaintiff must show that defendant's "predominant purpose" was to injure the plaintiff); <u>Lee & Lee Int'l, Inc. v. Lee</u>, 261 F. Supp. 2d 665, 679 (N.D. Tex. 2003) (under Texas law, plaintiff must show the defendant acted maliciously by intentionally preventing that relationship from occurring with the purpose of harming the plaintiff); <u>Ales-Peratis Foods International, Inc. v. American Can Co.</u>, 164 Cal.App.3d 277, 209 (Cal. App. 2d Dist. 1985)

---

[8]    In this case, Mr. Abla cannot possibly show that Brinker was a "stranger" to the alleged business relationship between himself and Maggiano's guests.  The fact that these individuals were Maggiano's guests was the only reason the guests came into contact with Mr. Abla in the first place.  Consequently, this claim, as pleaded, would likely fail under the laws of Georgia, California, Florida, and Wisconsin, and possibly others.

(California, on the other hand, allows for negligent interference with contractual relations in limited circumstances).

- Some jurisdictions require plaintiffs to prove the defendant lacked justification or failed to act in the legitimate exercise of its rights, while others require the defendant to do so as an affirmative defense. See e.g. Lowell v. Mother's Cake & Cookie Co., 79 Cal.App.3d 13, 18-19 (Cal. App. 1st Dist. 1972) (under California law justification is the affirmative defense of the defendant); Government Payment Service, Inc. v. Ace Bail Bonds, 854 N.E.2d 1205, 1209 (Ind. App. 2006) (in Indiana, plaintiff required to prove the absence of justification).[9]

- In some jurisdictions, the plaintiff must prove that the defendant's conduct actually induced a third party to refrain from entering into a business relationship. Class members in North Carolina, Indiana, California, Pennsylvania, and Michigan would need to make this showing, but others would not. See DaimlerChrysler Corp. v. Kirkhart, 148 N.C. App. 572, 585 (North Carolina law); Rice v. Hulsey, 829 N.E.2d 87 (Ind. App. 1995) (same for Indiana); Roth v. Rhodes, 25 Cal.App.4th 530, 30 Cal.Rptr.2d 706 (Cal. App. 4th Dist 1994) (same for California); Acumed LLC v. Advanced Surgical Services, Inc., 561 F.3d 199, 212 (3d Cir. 2009) (same for Pennsylvania); Lakeshore Community Hosp. v. Perry, 212 Mich. App. 396, 401 (1995) (same for Michigan).

## C.    Breach of Implied Contract

Nationwide certification of a breach of contract class would also lead to innumerable varying questions of state contract law, resulting from 21 "different bodies of complex substantive principles." Schnall, 2010 Wash. LEXIS 61, at *20. Courts have therefore been very reluctant to certify nationwide classes under a breach of contract theory. As Marino v. Home Depot U.S.A., Inc., 245 F.R.D. 729 (S.D. Fla. 2007) observed:

> Certifying a nationwide breach of contract class, where the laws of each state apply, would force the court to examine the nuances of each state's law. In breach of contract cases, states vary not only in their statutes of limitations, but also in their treatment of the admissibility of parol evidence and the types of damages available.

---

[9]    Certain jurisdictions, such as Florida and Illinois, require specific identification of the third party with whom plaintiffs would have had an advantageous or contractual relationship, but for the purportedly wrongful conduct. See e.g. Ferguson Transportation, Inc. v. North American Van Lines, Inc., 687 So.2d 821, 821-822 (Fla. 1996); Celex Group, Inc. v. Executive Gallery, Inc., 877 F. Supp. 1114, 1125 (N.D. Ill. 1995). Accordingly, for class members in those states, merely alleging that Defendants' guests declined to tip due to the mandatory service charge would not be sufficient evidence at trial; rather, the servers would have to identify specific guests whose failure to tip was causally related to the mandatory service charge.

Marino, 245 F.R.D. at 736.  Likewise, in Jackson National Life Insurance Co. Premium Litigation,

183 F.R.D. at 222-23, the court declined to certify a contract claim class, noting numerous variations

in state contract laws, including the statute of limitations, burden of proof standards, and the parol

evidence rule.  See also Jim Moore Ins. Agency, Inc. v. State Farm Mut. Auto. Ins. Co., 2003 U.S.

Dist. LEXIS 25550, at *40 (S.D. Fla. May 6, 2003) ("variations in tort and contract law of the several

governing jurisdictions, as well as the sheer volume of individual factual variations that would arise

at trial, overwhelm the common issues subject to generalized proof and defeat predominance.").  For

example, differing statutes of limitation are often cited as grounds for denial of nationwide

certification of contract claims.  Jim Moore Ins. Agency, 2003 U.S. Dist. LEXIS 25550, at *29

(citing Barnes v. Am. Tobacco Co., 161 F.3d 127, 149 (3rd Cir. 1998) ("Determining whether each

class member's claim is barred by the statute of limitations raises individual issues that prevent

certification.")).[10]  The Court will also be faced with whether the alleged breach of contract needs to

be material.  Compare Marino v. Home Depot U.S.A., Inc., 245 F.R.D. 729, 734 (S.D. Fla. 2007)

(denying class certification because Florida law requires breach to be material and class certification

would force jury "to make individualized determinations as to materiality for every class member")

with Reichert v. Gen. Ins. Co. Of Am., 68 Cal.2d 822 (1968) (cited by Marino for proposition that

California only requires simple breach).

### III.    MR. ABLA CANNOT ESTABLISH PREDOMINANCE BECAUSE THE COMMON LAW CLAIMS ARE INHERENTLY INDIVIDUALIZED.

As explained in detail below, Mr. Abla's common law claims with respect to each banquet

transaction at issue here raise numerous individualized questions precluding a finding of

predominance of common issues.

---

[10]    Such differences are important in this case.  For example, in California and Texas, the statute of limitations for contract actions is four years, while in Florida it is five years.  Compare Cal. Com. Code § 2725 and Tex. Civ. Prac. & Rem. § 16.004 with Fla. Stat. § 95.11.  In Massachusetts, it is six years.  Mass. Gen. Laws ch. 260, § 2.

### A.      Unjust Enrichment And Tortious Interference Claims

Courts recognize that where a cause of action contains an individual "reliance" aspect, the predominance element of Rule 23(b)(3) cannot be met.   <u>Sanford v. Nat'l Ass'n for the Self-Employed, Inc.</u>, 264 F.R.D. 11, 12 (D. Me. 2010) ("individualized issues of reliance will require extensive plaintiff-specific proof that will substantially outweigh the common proof.") (citing <u>Castano</u>, 84 F.3d at 745 ("a fraud cause of action cannot be certified when individual reliance will be an issue")); <u>Mowbray v. Waste Management Holdings, Inc.</u>, 189 F.R.D. 194, 198 (D. Mass. 1999) (explaining that when "the individual issue of reliance" must be litigated, certification is "inappropriate"); <u>Rothwell v. Chubb Life Ins. Co. of Am.</u>, 191 F.R.D. 25, 31 (D.N.H. 1998) (agreeing with "majority view that certification generally is inappropriate when individual reliance is an issue"); <u>Mack v. General Motors Acceptance Corp.</u>, 169 F.R.D. 671, 678 (M.D. Ala. 1996) (stating that, where individual reliance must be shown, "[t]here is no way to resolve the reliance issue on a class-wide basis").

The linchpin of Mr. Abla's theory is that guests eliminated or reduced tips in reliance on 'an alleged misrepresentation that the banquet fee would be distributed to the wait staff.  Under the cases cited above, he cannot as a matter of law satisfy the predominance element of Rule 23(b)(3).

Beyond the reliance issue, because unjust enrichment and tortious interference claims often depend on the individual circumstances underlying the transaction, courts have consistently held  that such claims are simply not suitable for class certification.  <u>See, e.g.</u>, <u>Vega v. T-Mobile USA, Inc.</u>, 564 F.3d 1256, 1274 (11th Cir. 2009) ("[C]ommon questions will rarely, if ever, predominate an unjust enrichment claim, the resolution of which turns on individualized facts."); <u>Babineau v. Federal Express Corp.</u>, 576 F.3d 1183, 1194-95 (11th Cir. 2009) (denying certification of quantum meruit claim, as it is inherently "highly individualized" and requires that a plaintiff demonstrate an "expectation of compensation"); <u>Bearden</u>, 2010 U.S. Dist. LEXIS 28331, at *33 (striking class

10

allegations where resolution of unjust enrichment claim would necessarily "depend on the specific facts of each class member's transaction").  See also De Giovanni v. Jani-King Int'l, Inc., 262 F.R.D. 71, 84 (D. Mass. 2009) (Young, J.) (denying certification of unjust enrichment claim where "unjust retention of a benefit could only be ascertained through complex and disputed individual inquiries"). See also  Martinez v. Weyerhaeuser Mortg. Co., 1997 U.S. Dist. LEXIS 22172, at *11-12 (S.D. Fla. June 25, 1997) (denying nationwide class certification of tortious interference and other common law claims).

Resolving Mr. Abla's claims on behalf of a nationwide class would necessarily require numerous individualized inquiries.  First, a fact finder would need to examine what each of thousands of guests believed the mandatory banquet fee to represent.  This will depend on the varying wording of the banquet contracts and the individualized conversations each guest had with restaurant personnel at each location for each event regarding the fee.  In addition, evidence would also need to be presented on a guest-by-guest basis regarding whether the guest relied on any alleged misrepresentations, and therefore reduced or eliminated a tip for the wait staff.  In other words, individualized inquiries would be necessary to determine whether each guest actually tipped the wait staff for each event, the amount of the tip, and the reasons for tipping or not tipping.  Whether a guest will tip and the size of that tip necessarily depends on a myriad of factors, including the individual guest's particular needs and circumstances and the level of service provided by the individual wait staff member at a particular event.

As the relevant case law makes clear, Mr. Abla's unjust enrichment and tortious interference claims raise too many individualized issues to satisfy the predominance test.

### B.        Breach Of Contract

Because no written contract exists, Mr. Abla claims that Brinker breached two different *implied* contracts, one with the wait staff and another with Brinker's guests.  He claims that Brinker

had an implied contract with the wait staff, through "industry custom" or Brinker's representations, that "gratuities are to be remitted to wait staff employees."  Compl. at Count III.  Mr. Abla also claims that Brinker breached a second implied contract with Maggiano's guests "that the wait staff employees would receive the proceeds of gratuities."  Id.

Both contract claims are based on an implied agreement that the wait staff would receive the full proceeds of the mandatory banquet fee.[11]  Even if the claims regarding these implied contracts were somehow cognizable, they are inherently unfit for class certification.  In order to certify his breach of contract claim, Mr. Abla would need to establish two elements:  (1) that the "terms of the contracts were the same for all class members"; and (2) that Brinker breached an agreement with each guest and each server.  De Giovanni v. Jani-King Int'l, Inc., 262 F.R.D. 71, 77 (D. Mass. 2009) (Young, J.).  Determining whether any such implied contract existed between Brinker and each guest or each server is an inherently individualized inquiry.  See Bielass v. New England Safe System, Inc., 617 F. Supp. 682, 684 (D. Mass. 1985) (implied contracts must be inferred from the total circumstances and the conduct of the parties).

Indeed, courts have routinely held that breach of contract claims are generally inappropriate for class certification.  See, e.g., Ramirez, 194 F.R.D. at 355 ("[b]reach of contract claims are, by definition, fact-specific to each individual, for in each instance the trier of fact must determine whether there was a promise, a contract, and, if so, what its terms were and whether it was breached.").  Without question, contract claims such as Mr. Abla's depend heavily on individual factual determinations.  See Brewster Wallcovering Co. v. Blue Mt. Wallcoverings, Inc., 68 Mass.

---

[11]    This allegation obviously conflicts with the central assertion in the Complaint: that Brinker has a standard practice of *not* distributing the full banquet fee to class members.  If this were indeed Brinker's standard practice, there could not possibly be an implied contract or agreement with guests or servers that the servers would receive 100% of the charge.  There could be no meeting of the minds that the staff was to receive the full proceeds of the banquet charge if, in fact, Brinker never intended to distribute it in that manner.  See Vieira v. First Am. Title Ins. Co., 668 F. Supp. 2d 282, 290 (D. Mass. 2009) (Woodlock, J.) (dismissing claim for breach of implied contract, because there could be no "meeting of the minds" where plaintiffs alleged that they had been misled as to a material term of the contract).

App. Ct. 582, 596 (Mass. App. Ct. 2007) ("whether a contract was intended to be formed, what were its terms, and whether it was supported by consideration are issues of fact for determination by the jury"); Basco v. Wal-Mart Stores, Inc., 216 F. Supp. 2d 592, 602-03 (E.D. La. 2002) (individual issues predominate regarding damages and defenses to oral contracts); Nagel v. ADM Investor Services, Inc., 65 F. Supp. 2d 740, 746 (N.D. Ill. 1999) ("Who said what to whom and when, and who relied on which statements, are not things that can be resolved as to…a class."); Cullen v. Whitman Medical Corp., 188 F.R.D. 226, 233 (E.D. Pa. 1999) (holding analysis requires inquiry into which terms were breached with regard to each claimant even with a standard contract).

Indeed, even if Mr. Abla were somehow able to establish that a contract existed with each separate guest, he would then need to establish that he was a third-party beneficiary of that contract. To do so, he would need to show that the parties to the contract specifically intended that he would be a beneficiary of that agreement.  See, e.g., Edelkind v. Fairmont Funding, Ltd., 539 F. Supp. 2d 449, 453 (D. Mass. 2007) (under Massachusetts law third-party beneficiaries are required to prove the parties' "clear and definite" intent that they were to be a beneficiary of the contract); Radosevic v. Virginia Intermont College, 651 F. Supp. 1037, 1039 (W.D. Va. 1987) (denying claim by third-party beneficiary under Virginia law without evidence that parties "clearly and definitely intended" to directly benefit plaintiff).  Therefore, every transaction would need to be examined individually to determine the intent of the guest.  Moreover, in light of Mr. Abla's assertion that Brinker  never intended to distribute the service charge to him, he cannot establish that Brinker intended him to be a beneficiary of the alleged contract.

If certified as a class, Mr. Abla's breach of contract claim will require the resolution of thousands of individual fact-based inquiries to determine the state of mind of each of each guest and wait staff member with respect to each banquet transaction in each of Maggiano's 44 restaurants nationwide over the past six years.  These individual fact questions will easily overwhelm any

questions common to the class.   Therefore, the breach of contract claim cannot satisfy the predominance requirement of Rule 23(b)(3).

## IV.   PLAINTIFF CANNOT SATISFY THE SUPERIORITY OR ADEQUACY REQUIREMENTS OF RULE 23.

In order to satisfy Rule 23(b)(3)'s superiority requirement, a class action must represent the best "available method[] for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  "[T]he 'focus is . . . on the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs.'"   In re ConAgra Peanut Butter Prods. Liab. Litig., 251 F.R.D. 689, 699 (N.D. Ga. 2008) (quoting Klay v. Humana, Inc., 382 F.3d 1241, 1269 (11th Cir. 2004)).  In other words, it is not enough that it may be *possible* for this Court to administer a nationwide class action.  The Court must determine that a nationwide class action is the *superior* method for resolving the claims of any potential class members when compared to other alternatives such as statewide class actions.  Factors relevant to the superiority test are:  (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.   Fed. R. Civ. P. 23(b)(3)(A)-(D).  In considering these factors, a court must take "a close look at the difficulties likely to be encountered in the management of a class action."  Markarian v. Conn. Mut. Life Ins. Co., 202 F.R.D. 60, 63 (D. Mass. 2001) (Wolf, J.).

Here, for all the reasons stated above, applying the laws of 21 states in a single class action would make this action completely unmanageable as compared to alternative methods of litigation, such as separate class action suits in each state.  Consequently, courts have determined that a nationwide state law class action is not the superior method of litigating claims where there are significant differences among state laws:

14

> Although it is true that small amounts of money are at issue and the decision will have broad impact . . . there is simply no efficiency in asking a trial judge to manage the laws of 50 different states as they apply to plaintiffs' contract claims and the varied factual scenarios inherent therein.

Schnall, 2010 Wash. LEXIS 61, at *20 (citation omitted).   See also Jim Moore Ins. Agency, 2003 U.S. Dist. LEXIS 25550, at *43-44 ("Requesting a jury to make several thousand factual findings would not be feasible.  Nor would it be feasible to instruct a jury on the relevant law; the Court could not fashion one instruction on each claim that 'would account for all the varying nuances that state law givers command.'").

Strongly cutting against a finding of superiority here is the fact that while Mr. Abla has decided to sue on his own behalf under the statutory law of Massachusetts, he does not raise claims under the wage and hour laws of the other 20 states, which in most cases would provide additional damages and remedies to these class members.  Presumably, he has decided not to raise these claims out of a recognition that these laws are substantially different, which would preclude certification of his nationwide class.  However, the superiority requirement compels the consideration of "the class members' interests in individually controlling the prosecution or defense of separate actions."  Fed. R. Civ. P. 23(b)(3)(A).  Although Mr. Abla has pleaded a claim for himself under the Massachusetts wage laws, which provide for reasonable attorney's fees for a prevailing plaintiff, as well as the possibility of treble damages, he expects members of the purported class outside Massachusetts to sacrifice any similar remedies under their own wage laws.  See, e.g., Ariz. Rev. Stat. § 23-355 (allows for possibility of treble damages); Cal. Labor Code § 351 (allows for possible attorney's fees, interest and costs); Fla. Stat. Ann. § 448.08 (allows for possible attorney's fees and costs).[12]

---

[12]   The following jurisdictions, whose residents are included in the purported class here, also provide additional remedies to prevailing plaintiffs under their wage and hour laws.  Washington, DC, D.C. Code Ann. § 32-1308 (liquidated damages and attorney's fees); Georgia, Ga. Code Ann. § 34-4-6 (up to double damages and attorney fees); Illinois, 820 Ill. Comp. Stat. 105/12 (costs, attorney fees and damages in the amount of two percent of the underpayment of wages for each month the payment remained outstanding); Indiana, §§ 22-2-4-4, 22-2-5-2 (up to double damages plus attorney fees); Minnesota, Minn. Stat. § 177.27(8) (violation can result in award of double damages and attorney fees); Nevada, Nev. Rev. Stat. 608.140 (attorney fees and costs); New Jersey, N.J. Stat. Ann.

Clearly, class members in these states have a heightened interest in controlling their own litigation, as they would be able to raise these additional state law statutory claims either in individual actions, or in separate state-specific class actions.  However, if Mr. Abla's nationwide class were certified, all such class members would waive their claim to these benefits, as subsequent actions under those statutes would be barred by the doctrine of res judicata.  Reppert v. Marvin Lumber & Cedar Co., 359 F.3d 53, 55-57 (1st Cir. 2004) (finding class settlement under 50 states' laws precluded class members' subsequent suit for additional damages); Kelly v. Nortel Networks Corp., 2004 U.S. App. LEXIS 2241, at *2 (1st Cir. 2004) (barring second lawsuit based on a legal theory that could have been litigated in a preceding lawsuit between the same parties);  Carr v. Tillery, 591 F.3d 909, 913-914 (7th Cir. 2010) (maintaining a lawsuit arising from the same events underlying a previous suit by changing the legal theory is barred by res judicata).  Mr. Abla's abandonment of these claims weighs heavily against a finding that superiority has been met.

Mr. Abla's disregard for such state law statutory claims (other than his own) also weighs heavily against Mr. Abla's status as an adequate class representative.  The adequacy element requires that there be no conflicts of interest between the named plaintiff and absent class members.  In re Pharm. Indus. Average Wholesale Price Litig., 252 F.R.D. 83, 104 (D. Mass. 2008) (citing Amchem, 521 U.S. 591, 625 (1997)).  Here, in an effort to avoid the commonality and predominance problems created by applying the wage laws of 21 different jurisdictions, Mr. Abla has abandoned absent class members' claims under the wage laws of all states but his home state of Massachusetts.  Numerous courts have denied certification on adequacy grounds in cases where a named plaintiff has placed absent class members at risk of having other, more beneficial, claims barred by res judicata.  See,

§ 34:11-56a25 (attorney fees); North Carolina, N.C. Gen. Stat. § 95-25.22 (liquidated damages up to the amount owed plus interest at 8% per year, and potential attorney fees); Ohio, Ohio Rev. Code Ann. § 4111.10 (attorney fees); Pennsyalvania, 43 Pa. Cons. Stat. §§ 260.9a and 260.10 (liquidated damages of up to 25% of the amount owed and attorney fees); Texas, Tex. Lab. Code Ann. §§ 62.201, 62.205 (double damages and attorney fees); Virginia, Va. Code. Ann. §§ 40.1-29; 40.1-28.12 (additional eight percent in interest per year, plus attorney fees equal to one-third of the total award); Washington, Wash. Rev. Code § 49.52.070 (double damages plus attorney fees).

e.g., Feinstein v. Firestone Tire & Rubber Co., 535 F. Supp. 595, 606 (S.D.N.Y. 1982) (denying certification where class representatives "impermissibly split a single cause of action" in an effort "to improve the possibility of demonstrating commonality").  See also Gardner v. Equifax Information Services, LLC, 2007 U.S. Dist. LEXIS 57416, at *14-16 (D. Minn. Aug. 6, 2007) (plaintiff deemed inadequate class representatives where he sought to forego actual damages, or a negligence claim, on behalf of the class); Foster v. St. Jude Medical, Inc., 229 F.R.D. 599, 604 (D. Minn. 2005) (named plaintiffs deemed inadequate where they sought compensatory damages for themselves, but only medical monitoring for the class, as it could "jeopardize the class members' rights to bring such claims in a subsequent case"); Clark v. Experian Info. Solutions, Inc., 2001 U.S. Dist. LEXIS 20024, at *10-11 (D.S.C. Mar. 19, 2001) (denying certification on adequacy grounds where plaintiffs abandoned state statutory and common law claims).

These courts also hold that providing absent class members the opportunity to opt out of the action does not provide sufficient due process protection.  Gardner, 2007 U.S. Dist LEXIS, at *16-17 ("the Court is unwilling to effectively bar absent class members' future legal claims because of the failure of those parties to opt out."); Clark, 2001 U.S. Dist. LEXIS 20024, at *12 (same) (citing Small v. Lorillard Tobacco Co., 679 N.Y.S.2d 593, 601-02 (N.Y. App. Div. 1998)) (ability to opt out insufficient to protect those who would seek remedies other than those chosen by the named plaintiff)).

## V.     MR. ABLA LACKS STANDING TO BRING CLAIMS UNDER THE COMMON LAWS OF STATES OTHER THAN MASSACHUSETTS.

"[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members."  General Telephone of the Southwest v. Falcon, 457 U.S. 147, 156.  Consequently, he must have standing to bring the claim(s) he purports to bring on behalf of the class.  As the U.S. District Court in Massachusetts recently explained:

The named plaintiff in a class action must meet all the jurisdictional requirements to bring an individual suit asserting the same claims, including standing. . . . *If a complaint includes multiple claims, at least one named plaintiff class representative must have Article III standing to raise each claim.* When no named representative has standing at the time the suit is brought, the court should dismiss the suit for lack of jurisdiction notwithstanding the class allegations.

Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp., 658 F. Supp. 2d 299, 304 (D. Mass. 2009) (Stearns, J.) (emphasis added) (citation omitted).  See also Prado-Steiman v. Bush, 221 F.3d 1266, 1279 (11th Cir. 2000) ("[T]here cannot be adequate typicality between a class and a named representative unless the named representative has individual standing to raise the legal claims of the class").  As a result, before a class can be certified, the court must determine that at least one of the named plaintiffs has standing to raise each claim raised against the defendants.  Id.

Courts have not permitted named plaintiffs to represent class members with regard to claims that they have no standing to raise on their own, including common law claims such as unjust enrichment brought under the laws of other states.  See, e.g., In re G-fees Antitrust Litig., 584 F. Supp. 2d 26, 46 (D.D.C. 2008) (granting defendants' motion to dismiss unjust enrichment claims in states where none of the named class action plaintiffs resided).  As a resident of Massachusetts, Mr. Abla has no standing to bring claims under the common laws of the other 20 states in his purported class.  Therefore, his nationwide class allegations should be rejected.

## VI.    THIS COURT SHOULD DECLINE TO FOLLOW THE RECENT DECISION IN OVERKA V. AMERICAN AIRLINES

In opposition to this motion, Mr. Abla will presumably rely heavily on Overka v. American Airlines, Inc., 2010 U.S. Dist. LEXIS 12300 (D. Mass. Feb. 4, 2010) (Young, J.).[13]  Overka, going against the great weight of authority as cited above, certified nationwide claims for unjust enrichment

---

[13]    Mr. Abla may also cite this Court's approval of a settlement class in Mitchell v. U.S. Airways. Inc., No. 08-10629 (D. Mass. Sept. 24, 2009) (Gertner, J.) (order granting motion for settlement approval).  However, as observed in Overka, "approval of a settlement class does not require the Court to enquire into the potential manageability concerns."  Overka, 2010 U.S. Dist. LEXIS 12300, at *13.  See also Amchem, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems.").  As no settlement class is under consideration here, the Court must consider potential manageability concerns that were not addressed in Mitchell.

and tortious interference.[14]  As the court in Overka explicitly stated, the defendants in Overka did not identify or explain the vast differences between the states with regard to the law of unjust enrichment.  Overka, 2010 U.S. Dist. LEXIS 12300, at *14 ("American . . . states that unjust enrichment claims vary from state to state.  It does not, however, point to any particular difference.").  The court's decision, therefore, was reached without the benefit of the detailed information provided here with regard to the differences in unjust enrichment law between the states.  The difficulty and confusion created by applying the law of numerous different states with respect to the different common law causes of action is clear.  As stated above, these differences have led numerous courts to deny class certification with regard to unjust enrichment classes.

Overka also did not address how certain state law elements themselves could affect class certification.  For example, the court did not address, or was perhaps not made aware of, the requirement under the laws of certain states that to sustain a claim for tortious interference, the defendant must be a stranger to both the contract and the business relationship giving rise to and underpinning the contract.  E.g., Atlanta Mkt. Ctr. Mgmt. Co., 269 Ga. at 608.  As explained above, this requirement is fatal to Mr. Abla's tortious interference claim under the laws of Georgia, California, Florida, and Wisconsin.  Also left unaddressed in Overka was the issue, addressed above, of whether a named plaintiff residing in Massachusetts has the requisite standing to bring causes of action under the laws of states where he or she does not reside.[15]

In Overka, one of the factors underlying the court's approval of class certification was the fact that the plaintiffs stipulated they would not base their claims for tortious interference and unjust enrichment on the wage laws of the different states.  Overka, 2010 U.S. Dist. LEXIS 12300, at *12

---

[14]    Overka did not address the propriety of certifying a nationwide breach of contract class.  The decision was limited to the theories of unjust enrichment and tortious interference.  As set forth in Section III.B. supra, such breach of contract claims are not suitable for class certification.

[15]    In Overka, certification was granted as to liability only.  Overka, 2010 U.S. Dist. LEXIS, at *7.  The court did not address how it would be manageable to adjudicate damages for the many disparate claimants.

n.4.  The court acknowledged that this stipulation could interfere with the "rights of the putative class members to proceed individually on the basis of their individual state's wage laws."  Id.  However, the court does not appear to have been made aware of, or did not consider, plaintiff's abandonment of state wage laws in connection with the superiority or adequacy requirements of Rule 23.   As described above, Mr. Abla's proposed class would preclude class members in other states from pursuing causes of action under their state wage laws, which in most instances offer significant additional relief.

In addition, the facts in Overka with regard to the superiority element are materially different.  Superiority was found in Overka, in part, because the claims were monetarily not extensive, centering on a $2.00 baggage fee collected by airport baggage handlers.  Id. at *27-28.  Here, even assuming arguendo that Mr. Abla's claims have merit, the amounts in controversy are far greater, equaling 18-20% of Maggiano's banquet fee for each banquet event for the past six years.   If Mr. Abla's claims have any merit, individual class members would therefore have a strong incentive to pursue their claims in their own states, either individually or as a statewide class action.  Overka also cited problems achieving numerosity if separate state class actions were to be pursued.  Given the number of employees at each Maggiano's location over the past six years, this is much less likely to be an issue here.  Indeed, Mr. Abla alleges that the numerosity element is satisfied as to the Boston Maggiano's alone.  Under these circumstances, it cannot be said that "individual or even state-wide lawsuits are unlikely." Id. at *28.

## CONCLUSION

For all of the foregoing reasons, the Court should grant Brinker's Motion to Dismiss and/or Strike Mr. Abla's Rule 23 Class Allegations.

Respectfully submitted,

BRINKER RESTAURANT CORPORATION AND
BRINKER INTERNATIONAL, INC. d/b/a
MAGGIANO'S LITTLE ITALY

By their attorneys,


/s/ Jeffrey S. Brody
Jeffrey S. Brody (BBO # 566032)
Douglas J. Hoffman (BBO # 640472)
JACKSON LEWIS LLP
75 Park Plaza
Boston, MA 02116
(617) 367-0025; (617) 367-2155 (fax)
brodyj@jacksonlewis.com
hoffmand@jacksonlewis.com

Dated: April 13, 2010


## CERTIFICATE OF SERVICE

This is to certify that on April 13, 2010, a copy of the foregoing document was electronically filed with the United States District Court for the District of Massachusetts through its Electronic Case Filing system.


/s/ Douglas J. Hoffman
Jackson Lewis LLP

21