UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ABDEL ABLA and ERWIN AGUILAR,      *
on behalf of themselves and all others   *
similarly situated,                              *
                                                      *
                    Plaintiffs,                     *
                                                      *
          v.                                          *     Civil Action No. 1:10-cv-10373-JLT
                                                      *
BRINKER RESTAURANT CORPORATION   *
and BRINKER INTERNATIONAL, INC.,      *
d/b/a MAGGIANO'S LITTLE ITALY,          *
                                                      *
                    Defendants.                    *

MEMORANDUM

December 19, 2011

TAURO, J.

I.      Introduction

        Before the court at a hearing on November 9, 2011, were both the Plaintiff's Assented to

Motion for Approval of Class Action Settlement for Massachusetts Subclass [#41] and Plaintiff's

Motion to Certify Class [#30].  Following the hearing, in an Order dated November 10, 2011,

Plaintiff's Assented to Motion for Approval of Class Action Settlement for Massachusetts

Subclass was ALLOWED.  Plaintiff's Motion to Certify Class [#30] was taken under advisement.

After careful consideration of both the arguments presented at the November 9, 2011, hearing and

the papers filed by the parties, Plaintiffs' Motion to Certify Class [#30] is this day DENIED for

the reasons set forth below.

II.     Background

        A.      Factual Background

Plaintiffs Abdel Abla and Erwin Aguilar were employed as servers at the Maggiano's Little Italy Restaurant in Boston, Massachusetts, which is owned by Defendants.[1]  As part of their job requirements, Plaintiffs served food and beverages at banquet events and private parties hosted at Maggiano's.[2]  It was Defendants' practice to add a gratuity or service charge to the bill for these events.[3]  The gratuity/service charge was calculated as a percentage of the bill, and was typically eighteen to twenty percent.[4]

Plaintiffs allege that, although this gratuity/service charge appears to be a tip for the wait staff, less than the entire amount of the charge was remitted to the servers who worked at the private events.[5]  Plaintiffs contend that Defendants failed to inform customers that the gratuity/service charge is not a tip and, therefore, customers tipped less as a result.[6]

Plaintiffs brought this action on behalf of themselves, a national class, and a Massachusetts sub-class.[7] Plaintiffs define the national class as, "all wait staff employees who have worked for the Defendants at any Maggiano's Little Italy restaurant throughout the country within the applicable statute of limitations and who have performed services for which the Defendants have charged customers a gratuity/service charge but have not remitted the full proceeds of that

---

[1]Am. Compl. [#26] ¶¶ 4-5.

[2]Am. Compl. [#26] ¶4.

[3]Am. Compl. [#26] ¶¶ 10-11.

[4]Am. Compl. [#26] ¶11.

[5]Am. Compl. [#26] ¶¶ 11-14.

[6]Am. Compl. [#26] ¶¶ 14-17.

[7]Am. Compl. [#26] ¶¶ 4-5, 34-35.

gratuity/service charge to the employees."[8]  The same language is used to define the membership

of the Massachusetts sub-class, with the additional condition that class members have earned an

hourly rate below Massachusetts minimum wage.[9]

     Plaintiffs brought three counts on behalf of both the national class and the Massachusetts

sub-class for: (1) tortious interference with contractual and/or advantageous relations; (2)

quantum meruit/unjust enrichment; and (3) breach of implied contract.[10]  Plaintiffs also brought

claims for violation of Mass. Gen. L. c. 149 § 152A and failure to pay minimum wage on behalf of

the Massachusetts sub-class only.[11]

    B.    <u>Procedural Background</u>

     This matter was filed by Plaintiffs on March 3, 2010, and was originally before Judge

Gertner, who dealt with early motions and discovery.  The <u>Amended Complaint</u> was filed on

March 8, 2011, and the Plaintiffs' <u>Motion for Class Certification</u> pursuant to Fed. R. Civ. P.

23(b)(3) was filed on May 5, 2011.  On June 21, 2011 the case was reassigned to this court.

     On November 9, 2011, the parties came before the court for a fairness hearing on the

proposed settlement of the Massachusetts sub-class. On November 10, 2011, an order was issued

approving the settlement.[12]  Under its terms, the settlement class, "consists of all persons who

worked as a banquet server at the Maggiano's Little Italy restaurant in Boston, Massachusetts for

---

[8]Am. Compl. [#26] ¶34.

[9]Am. Compl. [#26] ¶ 35.

[10]Am. Compl. [#26] at 9-10.

[11]Am. Compl. [#26] at 10.

[12]<u>Order</u> [#42].

all or part of the period from March 1, 2004 to November 30, 2010."[13]

By the terms of the settlement, the Defendant is required to pay $1,250,000 into a "qualified settlement fund."[14]  Deductions are made from the fund for attorneys' fees and for a "class representative enhancement" to named Plaintiffs in the amount of $15,000.[15]  Payments will be made to all of the Massachusetts sub-class members "in proportion to the amount of work performed within the statutory period, as measured by Defendants' payroll records showing the amount of service charge earned during the statutory period."[16]

As a condition of the settlement, Plaintiff Abla agreed to a general release of all claims against Defendants.[17]  Plaintiff Aguilar, however, agreed to settle and release only: "(1) any and all Massachusetts statutory claims against the Releasees, from the beginning of time to the date of Preliminary Approval of this settlement; and (2) any and all common law claims against the Releasees for the period from March 1, 2007 to the date of the preliminary approval of this settlement."[18]  Plaintiff Aguilar, therefore, has settled his claims against Defendants under the Massachusetts Tip and Wage law, and his claims arising during the statutory period where he could have received treble damages. But, he has not released Defendants from his common law

---

[13] Order [#42] at 1.

[14][#41-1] at 7.

[15][#41-1] at 3.

[16][#41] at 4. ("For purposes of this calculation, the amount of service charges received between March 1, 2007, and November 30, 2010, shall be trebled, in recognition of the treble damages available during the statute of limitations period for the Massachusetts sub-class members' statutory Tips Law claim.")

[17][#41-1] at 3.

[18][#41-1] at 4.

claims arising between March 1, 2004 and March 1, 2007.[19]  The Parties have stipulated that the

settlement of the Massachusetts sub-class is to be neutral with regard to Plaintiff's motion for

certification of the national class.[20]

III.    Discussion

The class action lawsuit is "an exception to the usual rule that litigation is conducted by

and on behalf of the individual named parties only."[21]  Under Rule 23, in order for a class to be

certified, it must meet the four requirements of Rule 23(a) in addition to one of the requirements

of Rule 23(b).  Rule 23(a) states that the class will be certified only if:

> (1) the class is so numerous that joinder of all members is impractical
> [numerosity requirement]; (2) there are questions of law or fact
> common to the class [commonality requirement]; (3) the claims or
> defenses of the representative parties are typical of the claims or
> defenses of the class [typicality requirement]; and (4) the
> representative parties will fairly and adequately protect the interests
> of the class [adequacy requirement].[22]

A party seeking certification under Rule 23(b)(3) must also show that:

> (1) the questions of law or fact common to class members
> predominate over any questions affecting only individual members and
> that (2) a class action is superior to other available methods for fairly
> and efficiently adjudicating the controversy.[23]

It is undisputed that, "[t]he moving party bears the burden of establishing the elements

---

[19]See [#41-1] at 9.

[20][#41-1] at 15.

[21]Wal-Mart Stores, Inc. v. Dukes, 131 S.Ct. 2541, 2550 (2011) (quoting Califano v.
Yamasaki, 442 U.S. 682, 700-701 (1979)).

[22]Overka 265 F.R.D. 14 at 17 (D. Mass. 2010).

[23]Id. (internal quotations omitted).

necessary for class certification: the four requirements of 23(a) and one of the several

requirements of Rule 23(b)."[24]  As the Supreme Court has recently emphasized, "Rule 23 does not

set forth a mere pleading standard.  A party seeking class certification must affirmatively

demonstrate his compliance with the Rule."[25]  In deciding a motion for class certification, "[a]

district court must conduct a rigorous analysis of the prerequisites established by Rule 23 before

certifying a class."[26]

      A.    <u>Plaintiff Is not an Adequate Class Representative under Rule 23(a)</u>.

In order to justify a departure from the general rule that litigation is to be conducted by

and on behalf of the named parties, "a class representative must be part of the class and 'possess

the same interest and suffer the same injury' as the class members."[27]  In order to ensure that this

is the case, under Rule 23(a), a named plaintiff in a class action must be an adequate

representative of the class.[28]  To establish this element, the court must conduct an, "inquiry into

whether the putative representative plaintiff's interests are aligned with other class members and

whether the plaintiff is in a position to vigorously protect the class' interests."[29]  As the First

Circuit has noted, "[a]dequate representation is particularly important because of the res judicata

---

[24]<u>In re Relafen Antitrust Litig.</u>, 218 F.R.D. 337, 341 (D. Mass. 2003) (citing <u>Smilow v. Sw. Bell Mobile Sys.</u>, 323 F.3d 32, 98 (1st Cir. 2003)).

[25]<u>Dukes</u>, 131 S.Ct. at 2551.

[26]<u>In re Credit Suisse-AOL Securities Litigation</u>, 253 F.R.D. 17, 21 (D. Mass. 2008) (quoting <u>Smilow v. Sw. Bell Mobile Sys.</u>, 323 F.3d 32, 38 (1st Cir. 2003)).

[27]<u>Dukes</u>, 131 S.Ct. at 2550 (quoting <u>East Tex. Motor Freight System, Inc. v. Rodriguez</u>, 431 U.S. 395, 403 (1977)).

[28]Fed. R. Civ. P. 23(a)(4).

[29]<u>In re Credit Suisse</u> 253 F.R.D. at 23.

implications of a class judgment.  If the case is not properly and vigorously conducted, either plaintiffs or defendants or both will suffer the consequences of being bound by the resulting judgment."[30]

The adequacy analysis has two steps.  "The Court must determine, 'first, whether any potential conflicts exist between the named plaintiffs and the prospective class members, and, second, whether the named plaintiffs and their counsel will prosecute their case vigorously.'"[31] Under the first prong of the analysis, a court must consider whether the interests of the named plaintiffs are aligned with those of the class, and whether the named plaintiffs are subject to any defenses that the rest of the class is not.[32]

In the Overka case, Judge Young certified a national class of sky caps challenging a baggage handling fee imposed by their employer American Airlines.[33]  In that case, however, the court noted that where certain named plaintiffs had already obtained a judgment in their favor in related litigation.  In light of that judgment, their interests were no longer  "aligned with those of other plaintiff representatives as they, but not the other named plaintiff representatives, [were]

---

[30]Andrews v. Bechtel Power Corp., 780 F.2d 124, 130 (1st Cir. 1985) (citing Kemp v. Birmingham News Col, 608 F.2d 1049 (5th Cir. 1979); Ferraro v. General Motors Corp., 105 F.R.D. 429, 431 (D.N.J. 1985)).

[31]Id. (quoting Guckenberger v. Boston Univ., 957 F. Supp. 306, 326 (D. Mass. 1997). See also Overka 265 F.R.D. at 19 ("The adequacy requirement has two factors: (1) that no potential conflicts exist between the named plaintiff and the class members and (2) that 'counsel chosen by the representative party is qualified, experienced, and able to vigorously conduct the proposed litigation.'") (quoting Andrews, 780 F.2d at 130).

[32]See Overka 265 F.R.D. at 19 n.3.

[33]Overka 265 F.R.D. at 24.

subject to potential defenses of res judicata, claim splitting, and accord and satisfaction."[34] The court observed that those individuals who had received a prior judgment could continue as members of the class, but could not remain as named plaintiffs.

In this case, Plaintiff Aguilar has settled the majority of his claims against Defendants, retaining only his common law claims arising between March 1, 2004 and March 1, 2007.[35] Plaintiffs' costs in the litigation thus far have been paid out of the settlement fund of the Massachusetts sub-class.[36]  Plaintiff has taken this unique approach in an attempt to retain the ability to act as a class representative for the national class, while still retaining the benefits of the settlement of the Massachusetts sub-class.[37]

This arrangement pushes the edges of what Rule 23 allows, leading to the conclusion that Plaintiff's partial settlement renders him an inadequate class representative under Rule 23(a). While Plaintiff Aguilar does still have live common law claims, he has obtained a substantial settlement from Defendants, including settlement of those claims for which he was entitled to treble damages under Massachusetts law.[38]  Plaintiff's costs in pursuing the litigation thus far have already been defrayed by the sub-class settlement.  Any award Plaintiff receives in a national class action will by reduced by the larger payment that Plaintiff has already received for the majority of

---

[34]Id.

[35][#41-1] ¶ 4.

[36]See [#41-1] ¶ 20.

[37][#41-1] ¶ 15 (indicating that the parties' intent is to have the settlement of the sub-class have no effect on the certification of the national class).

[38]See [#41-1] ¶4 (retaining claims only outside of the statute of limitations for the tip and wage law).

his claims.  This gives Plaintiff a lesser incentive to vigorously pursue his claims than another

potential national class member who has received no such satisfaction.[39]

  In light of the settlement, it can no longer be fairly said that Plaintiff has the same interest

in zealously pursuing the litigation as members of the proposed national class.   Plaintiff Aguilar

has only select common law claims remaining.  But, members of the proposed national class may

have live claims under the tip and wage laws of other states.  Trial of this case as a national class

action risks precluding potential class members in other states from recovering under the tip and

wage laws of those states when the named class representative has already received satisfaction

for his statutory tip and wage law claims.[40]  Plaintiff Aguilar, therefore, fails to meet the adequacy

requirement of Rule 23(a).

  B.  <u>Plaintiff Fails to Meet the Requirements of Rule 23(b)(3).</u>

  Under Rule 23(b)(3), the court is given a non-exhaustive list of factors by which to

evaluate the Rule's predominance and superiority requirements:

> (A) the class members' interest in individually controlling the
> prosecution or defense of separate actions; (B) the extent and nature
> of any litigation concerning the controversy already begun by or
> against class members; (C) the desirability or undesirability of
> concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.[41]

---

[39]<u>See</u> [#41-1] ¶ 16 ("Aguilar's receipt of settlement funds under this settlement may be used for the limited purpose of an offset to any damages that Aguilar may become entitled to as part of the purported National Class.").

[40]<u>See</u> settlement agreement [#41-1]; <u>see also</u> <u>Reppert v. Marvin Lumber & Cedar Co.</u>, 359 F.3d 53, 55-59 (1st Cir. 2004) (finding class settlement under 50 states' laws precluded class members' subsequent suit for additional damages).

[41]<u>Overka v. American Airlines</u>, 265 F.R.D. 14, 19 (D. Mass. 2010).

In order to establish predominance, Plaintiffs must "demonstrate that the proposed class is 'sufficiently cohesive to warrant adjudication by representation.'"[42]  Accordingly, "The predominance inquiry . . . involves an individualized, pragmatic evaluation of the relationship between and the relative significance of the common and individual issues."[43]  A determination of predominance, "necessarily implicates the judge's discretion, 'because [it] requires a common sense judgment regarding what the case is really about, and whether it would be more efficient to try the case as a class suit.'"[44]

In the present case, it is clear that Plaintiffs have not met their burden of showing that the predominance requirement of Rule 23(b)(3) is satisfied.  The evidence before the court demonstrates that banquet contracts often differ between different restaurant locations, and even between different events at the same restaurant.[45]  When booking a banquet, customers often speak to local banquet sales managers, who are given broad discretion in negotiating and explaining the terms and conditions of banquet contracts, including the service charge.[46]  Banquet customers who inquired about the service charge were generally informed that part of it went to

---

[42]Overka, 265 F.R.D. at 19 (quoting Amchem Products, Inc. v. Windsor, 521 U.S. 591, 623 (1997)).

[43]In re Relafen Antitrust Litigation 218 F.R.D. 337, 343 (D. Mass. 2003) (citing 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1778 (2d ed.)).

[44]Overka 265 F.R.D. at 19 (quoting Margaret Hall Foundation, Inc. v. Atlantic Fin. Mgmt., Inc., 1987 WL 15884, at *4 (D. Mass 1987)).

[45]See Hoffman Aff. Ex. A (Machul Tr. at 8:7-9:20) [#34-1].

[46]See Hoffman Aff. Exs. B-F [#34-2 - #34-6]; see also Abla Tr., Hoffman Aff. Ex. G (Abla Tr. at 56:2-19) [#34-7]; Hoffman Aff. Ex. A (Machul Tr. at 50:23-52:17) [#34-1].

the restaurant, and part was given to the staff.[47]  Customers also learned about the distribution of

the service charges through conversations with the wait staff.[48]  It is also clear that the banquet

checks used by Defendants had a separate line for a gratuity, and that banquet servers did, in fact,

receive gratuities on top of the service charge.[49]

Plaintiffs attempt to assert common law claims for unjust enrichment/quantum meruit,

tortious interference, and breach of implied contract in the twenty-one states where Maggiano's

restaurants exist.[50]  Under each of these theories of recovery, the predominance requirement is not

met because individual questions will dominate the determination of both liability and damages.

Plaintiffs' breach of contract claim is based on the existence of an implied contract between

customers and defendants, where the servers were third party beneficiaries.[51]  Because there is no

written contract, Plaintiffs will not only have to prove contract formation between customers and

the restaurant, they will also have to prove that the servers were the intended third party

beneficiaries, and that the terms of these implied contracts were the same as to all class

members.[52]  It is not possible or advantageous to attempt to prove liability for breach of implied

---

[47]Hoffman Aff. Ex. A (Machul Tr. at 51:20-52:10) [#34-1]; Hoffman Aff. Exs. B-F [#34-2 - #34-6].

[48]Hoffman Aff. Ex. H (Aguilar Tr. at 38:6-39:16) [#34-8].

[49]See banquet check [#30-1]; Hoffman Aff. Ex. G (Abla Tr. at 37:22-38:4) [#34-7].

[50]See Am. Compl. [#26] at 8-11.

[51]See Am. Compl. [#26] at 10.

[52]See Di Giovanni v. Jani-King Int'l, Inc., 262 F.R.D. 71, 77 (D. Mass. 2009) (Plaintiffs would need to establish that the "terms of the contracts were the same for all class members."); see also Bielass v. New England Safe System, Inc., 617 F. Supp. 682, 684 (D. Mass. 1985) (terms of implied contract can only be inferred from the total circumstances).

contract on a class-wide basis, because the very existence of a contract as to each event at each restaurant will be subject to individual proof and defense.

Similar problems of individual inquiries beset Plaintiffs' claims for unjust enrichment/quantum meruit and tortious interference.  The lynchpin of a claim for unjust enrichment is that the enrichment was, in fact, unjust.[53] As Defendants point out, "whether or not the enrichment was unjust for a particular banquet would depend on whether the customer believed that the entire banquet service charge was provided to the banquet servers."[54] As with the claims for breach of implied contract, this inquiry requires an examination of the context of each individual transaction, and thus is not subject to class-wide proof.[55]  Plaintiffs' tortious interference claims also fail for this reason because even the existence of a business relationship with which Defendants could have interfered will be subject to an individualized inquiry into the circumstances surrounding each banquet event, and the customers' understanding of the terms of the service charge.[56]  For the above-stated reasons, it is clear that Plaintiffs have not satisfied the demanding predominance criterion under Rule 23.[57]

The requirement of superiority, like the predominance criterion, "ensures that resolution

---

[53]See Bushkin Assoc., Inc. v. Raytheon Col, 906 F.2d 11, 15 (1st Cir. 1990).

[54][#33] at 12.

[55]See Higgins v. MetLife Ins. Co., No. 06-12317 (D. Mass. Dec. 22, 2008) (Zobel, J.) (Hoffman Aff. Ex. M)[#34-13]; see also Babineau v. Federal Experss Corp., 576 F.3d 1183, 1194-95 (11th Cir. 2009) (denying certification because quantum meruit is "highly individualized" and requires that a plaintiff demonstrate an "expectation of compensation.").

[56]See supra n. 45-49.

[57]See Amchem Prods. v. Windsor, 521 U.S. 591, 623-24 (1997)(finding that the Rule 23(b)(3) predominance requirement is "far more demanding" than the commonality requirement of Rule 23(a)).

by class action will 'achieve economies of time, effort, and expense, and promote . . . uniformity

of decision as to persons similarly situated, without sacrificing procedural fairness or bringing

about other undesirable results.'"[58]  Under Rule 23, a class action must represent the best

"available method [] for the fair and efficient adjudication of the controversy."[59]  Under the rule,

"a class action must be[60] superior, not just as good as, other available methods."

        In this case, the balance of the factors weighs in favor of denying class certification.  First,

in the event that class certification is denied, potential members of a national class will not be left

without an avenue to pursue a remedy.  As the court's approval of the settlement of the

Massachusetts subclass demonstrates, the potential class members from each restaurant are

sufficiently numerous to warrant certification of state-wide classes capable of seeking redress for

the injuries alleged.[61]

        The evidence submitted to the court shows that this matter is more appropriately dealt

with on a state-wide basis.  Defendants have submitted numerous documents and affidavits, which

establish that the service charge policy was implemented differently at different restaurant

locations.[62]  Plaintiffs have failed to rebut this testimony, and have simply asserted that the "service

charge" appeared on company-wide document templates.[63]  Because of the discretion given to

_____

[58]Relafen, 218 F.R.D. at 346 (quoting Amchem, 521 U.S. at 615.)

[59]Fed. R. Civ. P. 23(b)(3).

[60]4 Newberg on Class Actions § 13:11 (4th ed.).

[61]See Order Approving Sub-Class Settlement [#42].

[62]See e.g., Hoffman Declaration Exh. A-F [#34-1 - #34-6].

[63]See Pl. Reply in Support of Class Certification [#36] at 6.

13

area banquet managers, and because of the differences in state common law, state-wide claims are much more susceptible to common proof of liability than a proposed national class.[64]

      The settlement of the Massachusetts sub-class must also be considered in determining the superiority of a class action on these claims in this venue.  After the settlement of the Massachusetts sub-class, only one named plaintiff remains.[65]  Plaintiff Aguilar is the only potential class member with any connection to the Commonwealth of Massachusetts.[66]  This means that the court would be in the awkward position of presiding over a class action where all of the discovery would take place outside of the Commonwealth, and the law to be applied is the law of twenty-one other states, but not the Commonwealth of Massachusetts.  It is clear, therefore, that litigation by this named plaintiff on behalf of a national class in this forum is not a superior method of adjudication of the common law claims raised on behalf of the proposed national class. Certification under Rule 23(b)(3) must be denied.

IV.    <u>Conclusion</u>

      For the foregoing reasons, Plaintiff's <u>Motion to Certify Class</u> [#30] is DENIED.


AN ORDER HAS BEEN ISSUED.


                                              ____/s/ Joseph L. Tauro_____
                                              United States District Judge

---

[64]<u>See also</u> discussion of predominance requirement <u>supra</u>.

[65]<u>See</u> settlement agreement [#41-1].

[66]<u>See</u> settlement agreement [#41-1].